AGUEDA RIVERA, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; STATE INSURANCE FUND, Intervener.

No. 243. Argued June 8, 1942.—Decided July 20, 1942.

*Ismael Soldevila* for petitioner. *George A. Malcolm, Attorney General, G. Benítez Gautier, Assistant Attorney General,* and *G. Atiles Moréu, A. de Jesús Matos,* and *J. Correa Suárez, Attorneys of the State Insurance Fund,* for respondent.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Carmelo Rivera, a laborer who worked for Juan Burgos, an employer insured with the State Insurance Fund, died on May 23, 1938, as the result from the goring of an ox received on the 17th of that same month, while in the course of his employment in Ceiba, P. R.

The Manager of the State Insurance Fund, by a ruling dated July 7, 1938, declared that the accident by which the laborer had lost his life was one provided for by our Workmen's Accident Compensation Act and thus subject to compensation, but, that there being no person with a legal right that depended upon the deceased laborer for his or her subsistence, he ordered the dismissal of the case.

On August 3 of that same year, Agueda Rivera, a sister of the laborer Carmelo Rivera, filed an appeal from said ruling with the Industrial Commission, appearing as mother with the *patria potestas* over the minors Norberto and Juanita Rivera and alleging that the same depended for their subsistence on what their uncle, the deceased laborer, earned.

After a hearing, the Industrial Commission, on November 17, 1938, decided that nephews were not included among the relatives entitled to receive compensation, according to subdivision 5, §3 of Act No. 45 of 1935 (Laws of 1935, p. 250).

On December 2, 1938, petitioner, Agueda Rivera, filed a motion for reconsideration, which was dismissed on the 28th of that same month and year. No petition for review was filed against that decision.

Afterwards, on July 5, 1939, Agueda Rivera appeared again before the Industrial Commission filing an appeal from the ruling of the Manager of the State Insurance Fund of July 7, 1938, alleging that she was the foster mother (*madre de crianza*) of the deceased laborer and that she depended upon him for her subsistence.

After a hearing, the Industrial Commission, on May 23, 1940, filed a decision in the case in the sense that:

". . . Agueda Rivera has not proved her alleged statu<sup>r</sup> of foster mother of Carmelo Rivera, and we hereby decide, agreeing with the Manager of the State Insurance Fund, that Carmelo Rivera left upon his death no beneficiaries with a legal right to the compensation that could have originated by reason of his death due to a labor accident and we hereby dismiss the present appeal."

After her petition for reconsideration of said resolution was denied, the petitioner filed the present appeal, pointing out the commission of four errors, as follows:

"A. In deciding, as was in fact decided, against petitioner the question of law on the sufficiency of the evidence, having sustained that the same is not sufficient to declare the existence of the relationship of foster mother and foster son between petitioner and the deceased laborer.

"B. In requiring, as was in fact required, as a condition for the existence of the relationship of foster mother and foster son, that said relationship should start from the infancy of the child, in spite of the fact that there is no statute so prescribing nor any natural or logical reason to sustain such conclusion, when even adoption, which is a more formal and solemn institution may be established, according to the Civil Code, in favor of a person of legal age, with his or her consent.

"C. In declaring that the petitioner was not the foster mother of the deceased laborer, Carmelo Rivera, even though the evidence offered was sufficient to prove such relationship.

"D. In giving a restrictive interpretation to the third paragraph of subdivision 5 of section 3 of the Workmen's Accident Compensation Act (Laws of 1935, p. 266) acknowledging the right to compensation of foster parents in default of other relatives with a better right and provided that the former depended on what the laborer earned."

The only point in issue in this case is whether Agueda Rivera was or was not the foster mother of the deceased laborer.

 The following facts were declared by the Industrial Commission as proven by the petitioner, on the hearing:

"(a) That Agueda Rivera was only 4 years older than her brother Carmelo.

"(b) That Carmelo lived with his father until the latter's death at which time he came to reside with Agueda.

"(c) That Carmelo came to Agueda's home when he was almost an adult, and already working for a living.

"(d) That ever since he came to reside with Agueda he gave her his salary which she employed in the support of all in the house."

Does this evidence sustain the allegation of the petitioner that Carmelo Rivera was her foster son?

The term foster child (*hijo de crianza*) is not defined in our Workmen's Accident Compensation Act. This law merely mentions, among the persons with a right to compensation as dependents, foster children and foster parents.

We have been able to locate, among our statutes, only one other law in which reference is also made to the relationship between foster parents and foster children (*padres e hijos de crianza*). That law is Act No. 238 approved May 15, 1938 "Creating a System of Foster Homes, etc." In the same it is defined, among others, the term Foster Home (*Hogar de Crianza*) as "that which will furnish shelter, food and individual attention to a child not its own."

Let us now see how the dictionary defines the term "foster child" (*hijo de crianza*) and "foster parent" (*padre de crianza*).

"*Crianza*"—as defined by the "*Diccionario de la Lengua Española*" ("Dictionary of the Spanish Language") (*Real Academia Española*, 1939 ed.) is the "action and effect of nursing. Being called so, in particular, the one received from mothers or wet nurses during lactancy. Period of lactancy . . . *Dar crianza a uno* . . . To nurse, to care of one's nursing."

*"Criar"*—"3. Nourishing or feeding of the child by the mother or wet nurse with the milk of their breasts or with feeding bottles. 5. Instruct, educate and guide . . . *Estar uno criado* . . . To be able to take care of oneself without the aid or guidance of somebody else."

The "Diccionario Salvat" (Salvat Dictionary) and the *"Diccionario Enciclopédico Hispano-Americano"* (Hispano-American Enciclopedic Dictionary) express the same ideas.

From Appleton's "New English–Spanish Spanish–English Dictionary (1931, Ed.) we take the following meaning of the word "Foster—II a. As an adjective, it is commonly applied to names that by themselves denote kinship, to express an analogous condition due to nursing or, generally but not necessarily adoption.—foster brother, child, sister— milk brother, child, sister, adopted or nursed as own children, etc. foster mother, father—adopted mother, father, or those having nursed the corresponding foster children.—foster home—nursing home, where alien children are nursed."

From "Webster's Universities Dictionary of the English Language" (1940 ed.) we take the following concepts:

*"Foster child*—A child nursed by a woman not the mother, or bred by a man not the father."

*"Foster father*—One who takes the place of a father in bringing up and educating a child."

*"Foster mother*—A nurse, a woman who nurses and cares for the child of another."

The terms *madre, padre,* or *hijo de crianza* (foster mother, father or child) do not seem to have been adopted yet by the Spanish Royal Academy and therefore do not appear in the dictionary published by said institution. Nevertheless, in Puerto Rico, the terms are frequently used in every day language, to the extent of having been incorporated to some of our statutes, being used, as we are given to understand, in the same sense as that of the foster father, mother, or child of the English language. For this reason, it is but

natural, that only children who are brought up, that is, who are educated, guided or instructed from infancy by a person other than their natural parents can be considered as foster children. Thus, a person who is a grown up, that is, "who can take care of himself without the aid or guidance of somebody else," has undoubtedly, surpassed the age at which the relationship of foster parent and child can be established between him and a person older than himself.

In the case at bar, as was demonstrated by the evidence offered at the hearing, Carmelo Rivera came to live in the home of his alleged foster mother, the petitioner, when he was "almost an adult, and already working for a living", that is, already fostered, able to take care of himself without the aid or guidance of another. Thus, it is not barely possible that the relationship of foster parent and child could have been established between a person already fostered and another 4 years its elder, for in order that such a relationship could be established it should start from the childhood or infancy of the foster child.

The decision appealed from is hereby affirmed.